UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VELVET L. J. K.,[1]

Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

Defendant.

Case No. 5:23-cv-00054-MAR

MEMORANDUM AND ORDER

Plaintiff Velvet L. J. K. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her application for Title II Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings consistent with this Order.

///

///

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

# PROCEDURAL HISTORY

On January 22, 2020, Plaintiff protectively filed an application for DIB, alleging a disability onset date of September 20, 2019. Administrative Record ("AR") at 20, 233–38. Plaintiff's application was denied initially on September 8, 2020, and upon reconsideration on January 7, 2021. Id. at 20, 99–102, 117–23. She then requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 20, 138.

On September 8, 2021, Plaintiff, represented by counsel, and a vocational expert ("VE") testified telephonically[2] at a hearing before the assigned ALJ. Id. at 39–57. On October 6, 2021, the ALJ issued a decision denying the application. Id. at 17–38. Plaintiff filed a request with the Agency's Appeals Council to review the ALJ's decision, which the Council denied on September 6, 2022. Id. at 6–11.

On January 1, 2023, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1. On April 13, 2023, Plaintiff filed a Motion for Summary Judgement ("Pl. MSJ"). Dkt. 12. Defendant filed an Opposition and Cross-Motion for Summary Judgement ("Def. MSJ") on May 15, 2023. Dkt. 18.

# II.

# PLAINTIFF'S BACKGROUND

Plaintiff was forty-eight (48) years old on the alleged disability onset date and fifty (50) years old at the time of the administrative hearing.[3] AR at 32, 58. Plaintiff has a master's degree. Id. at 44. She has prior work history for seventeen (17) years as an employment program representative for the California Employment Development Department ("EDD"). Id. at 32, 44–45, 261–62. She alleges disability

---

[2] The hearing was conducted telephonically due to the Coronavirus Disease of 2019 ("COVID-19") pandemic. AR at 20, 41.

[3] Accordingly, Plaintiff was considered a "younger person" on her alleged onset date, and "closely approaching advanced age" at the hearing. AR at 32, 35, 59; see Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1069 (9th Cir. 2010) (explaining that social security regulations define "younger persons" as "those persons under age 50" and "closely approaching advanced age" as "those persons age 50–54"); 20 C.F.R. § 404.1563(d)-(e).

based on: (1) manic depression; (2) fibromyalgia, and; (3) rheumatoid arthritis. Id. at 43, 49, 254.

## III.

## STANDARD FOR EVALUATING DISABILITY

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve (12) months. 42 U.S.C. § 423 (d)(1)(a); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. Ford v. Saul, 950 F.3d 1141, 1148–49 (9th Cir. 2020); 20 C.F.R. § 404.1520. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[4]

(4) Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

---

[4] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins, 466 F.3d at 883.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098–99; see also 20 C.F.R. § 404.1520(b)–(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Ford, 950 F.3d at 1148; Bustamante, 262 F.3d at 953–54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(g)(1); Tackett, 180 F.3d at 1098–99, 1100; Reddick, 157 F.3d at 721.

## IV.

## THE ALJ'S DECISION

### A. STEP ONE

At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity since September 20, 2019, the alleged onset date[.]" AR at 22.

### B. STEP TWO

At step two, the ALJ found that Plaintiff had "the following severe impairments: bilateral shoulder impingement syndrome; bilateral carpel tunnel syndrome; degenerative disc disease of the lumbar spine with stenosis and radiculopathy; fibromyalgia; chronic pain syndrome; obesity; myofascial pain syndrome; cervical spine degenerative disc disease; cervical facet syndrome; mood disorder; generalized anxiety disorder; major depressive disorder; panic disorder; and Covid-19[.]" AR at 22–23.

///

**C. STEP THREE**

At step three, the ALJ found that Plaintiff did not "have an impairment or combination of impairments that meets or medically equal[s] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" AR at 23–25.

**D. RFC DETERMINATION**

The ALJ found that Plaintiff had the RFC to perform light work,[5] except:

> [S]he must be allowed to stand up to 5 minutes after every 30 minutes of sitting, and to sit down up to 5 minutes after every 30 minutes of standing, while remaining on task. She can frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities. She can occasionally push or pull or operate foot controls with both lower extremities. She can occasionally kneel, crouch, stoop, balance, and crawl, as defined in the SCO, and can occasionally climb stairs and ramps. She can never climb ladders, ropes, and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. She can tolerate occasional exposure to vibration. In addition, [Plaintiff] is able to understand, carry-out, and remember simple instructions, and make simple work-related decisions. She can occasionally deal with supervisors and co-workers, and can never deal with the public. She can occasionally deal with changed in a routine work setting.

AR at 25–31.

**E. STEP FOUR**

At step four, the ALJ found that Plaintiff was "unable to perform any past relevant work[.]" AR at 32.

///

///

---

[5] "Light work" is defined as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also Aide R. v. Saul, No. 5:19-02069 ADS, 2020 WL 7773896, at *2 n.6 (C.D. Cal. Dec. 30, 2020).

**F. STEP FIVE**

At step five, the ALJ found that, "considering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." AR at 32. With the assistance of the VE's testimony, the ALJ found that Plaintiff would be able to perform occupations such as routing clerk, assembler, and price marker. Id. at 32–33. Accordingly, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, From September 20, 2019. Through the date of [the ALJ] decision[.]" Id. at 33.

**V.**

**PLAINTIFF'S CLAIMS**

Plaintiff presents two (2) disputed issues: (1) whether the ALJ's evaluation of Plaintiff's subjective symptoms was legally sufficient; and (2) whether the ALJ's evaluation of the medical evidence was legally sufficient.[6] Pl. MSJ at 4.

**VI.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). It is more than a scintilla but less than a preponderance. Id. To determine whether

---

[6] The Court finds the second issue dispositive of this matter and thus declines to address the remaining issue. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand.").

substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court . . . may not affirm simply by isolating a 'specific quantum of supporting evidence'") (quoting Robbins, 466 F.3d at 882). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720–21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021).

The reviewing court may review only the reasons stated by the ALJ in the decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

## VII.

## DISCUSSION

### A. THE ALJ ERRED BY FAILING TO CONSIDER ALL OF THE MEDICAL OPINION EVIDENCE

#### 1. Relevant facts and decision

##### a. Medical opinions

Plaintiff contends that the ALJ either wholly failed to consider or improperly rejected the following medical opinions simply because they saw Plaintiff in the context of a worker's compensation claim. Pl. MSJ at 8–10.

///

**(1) Dr. Tabibian**

Dr. Tabibian saw Plaintiff for follow-up evaluations at least six (6) times from September 2018 to October 2019.[7] AR at 1460–1508; 1942–66. On October 21, 2019—his most recent visit with Plaintiff in the record—Dr. Tabibian noted, among other things, impressions of unspecified sprains of both wrists and ligaments of the lumbar spine, carpal tunnel syndrome on both sides, and generalized anxiety disorder. Id. at 1944. Dr. Tabibian requested home care assistance to help with Plaintiff's personal hygiene, for two hours per day for six months; Dr. Tabibian found this care was justified because Plaintiff's need for assistance from her family was "further diminishing her sense of self-esteem."[8] Id. at 1945. Dr. Tabibian concluded that Plaintiff was temporarily totally disabled, and could later return to modified duty with the following restrictions: (1) no heavy pushing, pulling, lifting, or carrying over ten pounds; (2) avoid bending, stooping, twisting, turning, squatting and crouching frequently; (3) ability to sit or stand as needed to mitigate pain; (4) restricted from repetitive gripping, grasping, squeezing, pinching, holding, and torquing using both arms; (5) avoid repetitive/frequent hand motions; (6) should type only for ten minutes per hour, followed by fifty minutes of non-typing or writing work duty; (7) limited driving to twenty minutes one way twice a day; and (8) allowed to work remotely from home. Id. at 1945–46. He noted that these are considered to be permanent work restrictions. Id. at 1946.

///

///

[7] While October 2019 was the date of the last report in the record from Dr. Tabibian, the record suggests that there were further visits. Dr. Ganjianpour and Dr. Lee note that their May 2020 report was made at the request of Dr. Tabibian, and they defer to him for formal work recommendations. AR at 2588. Dr. Greils also refers to a December 2, 2019 report from Dr. Tabibian. Id. at 2542.

[8] Dr. Tabibian found that this care was justified, in part, "as per AME, Dr. Greils, report dated 2/14/19;" in his report, in addition to recommending homecare, Dr. Greils references a 2016 report from Dr. Tabibian, indicating that Tabibian saw Plaintiff even before 2018. AR at 1945, 1365–82, 1967–2053. .

**(2) Dr. Ganjianpour**[9]

At the request of Dr. Tabibian, on May 11, 2020, Dr. Ganjianpour and Dr. Lee saw Plaintiff for an "Orthopedic Examination." AR at 2587–89. Due to the COVID-19 pandemic, the visit was conducted via telemedicine conference—they performed a physical examination by instructing Plaintiff to perform certain tasks and evaluate her function. Id. at 2587–88. They deferred to Dr. Tabibian as the treating physician for formal work recommendations, but recommended that Plaintiff avoid repetitive at or above shoulder level work and lifting over ten (10) pounds on the right side. Id. at 2588.

**(3) Dr. Greils**

On February 28, 2020 Dr. Greils submitted a supplemental psychiatric report regarding Plaintiff's worker's compensation claim. AR at 2539–50. Previously, he submitted an initial report in March 2018, a re-evaluation in February 2019, and a supplemental record review in December 2019. Id. at 2351–84. Dr. Greils reviewed and summarized Plaintiff's records dating back to at least 2008. Id. at 2540–48. In his most recent report, Dr. Greils provided a "final percentage of permanent disability ratings" using the AMA Guides, fifth edition. Id. at 2540, 2548.

**(4) Dr. Levine**

On August 8, 2018, Dr. Levine saw Plaintiff for a "Medical Evaluation in Rheumatology." AR at 1291. Dr. Levine's report is based on a two-hour physical examination of Plaintiff, and a review of Plaintiff's medical records dating back to 2009. Id. at 1291–1328. Dr. Levine confirmed her previous diagnosis of fibromyalgia. Id. at 1329–30. In a discussion of his findings, Dr. Levine provided a "total whole person impairment" percentage based on the AMA Guides, fifth edition,

[9] This report is signed by both Dr. Ganjianpour and Dr. Lee, and notes that, while Dr. Lee assisted in evaluation and report preparation as designated by Dr. Ganjianpour, "all decisions related to surgery and medications are reviewed, recommended, and prescribed by Dr. Mark Ganjianpour, M.D." AR at 2588–89. Accordingly, the Court will refer to Dr. Ganjianpour when discussing this report.

and concluded that Plaintiff has a permanent disability limiting her to semi-sedentary work, which would allow her to sit and stand at will. Id. at 1330–42. He stated that he "did not pick disability resulting in limitation to light work as this contemplates that [Plaintiff] can do work in a standing or walking position with a minimum of demands for physical effort. This could be construed a[s] requiring a patient like this to stand or walk for an entire day. She is not capable of such physical exertion." Id. at 1336. Additionally, Dr. Levine concluded that Plaintiff would need help with heavier household chores, such as getting down on her hands and knees to clean bathrooms, doing heavier vacuuming or sweeping, and cleaning windows. Id. at 1340.

**b. ALJ's decision**

In the ALJ's discussion of the medical opinion evidence, he summarized and discussed the opinions of: (1) state medical consultant, Dr. A. Khan; (2) state medical consultant, Dr. E. Steinsapir; (3) state psychological consultant, Dr. Anna M. Franco; (4) state psychological consultant, Dr. Pamela Hawkins; (5) Plaintiff's treating physician, Dr. B. Sam Tabibian; (6) Plaintiff's treating physician, Dr. Gennady Musher; (7) Plaintiff's treating physician, Dr. Mark Ganjianpour; and (8) psychological consultative examiner, Dr. Margaret Donohue. AR at 28–31. Regarding the opinions of Dr. Tabibian, Dr. Musher, and Dr. Ganjianpour, the ALJ explained that he considered them to be of limited persuasiveness because they were "created in the context of [Plaintiff's] worker's compensation case and the disability ratings were made as a part of a separate program, using unknown criteria." Id. at 30–31. The ALJ did not mention Dr. Greils and Dr. Levine's opinions.

**2. Applicable law**

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844–01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide the ALJ will no longer "give any specific evidentiary weight, including controlling weight, to

any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844-01, at 5867–68; see also 20 C.F.R. § 404.1520c(a).

Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(b). Medical opinion evidence[10] is defined as "a statement from a medical source about what [Plaintiff] can still do despite [her] impairment[s] and whether [she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: . . . perform[ing] physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)[.]"[11] 20 C.F.R § 1513(a)(2). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include: supportability, consistency, relationship with claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment relationship, and examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Agency's] disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

---

[10] Other categories of medical evidence are: (1) objective medical evidence: "medical signs, laboratory findings, or both," and (2) other medical evidence: "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgements about the nature and severity of [Plaintiff's] impairments, [] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R § 404.1513(a)(1), (3)–(4).

[11] Physical demands are most relevant in this case, but the following are also listed: (1) "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;" (2) "ability to perform other demands or work, such as seeing, hearing, or using other senses;" and (3) "ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 1513(a)(2)(ii)-(iv).

Supportability and consistency are the most important factors, and therefore, the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are explained in the regulations as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how "the factors in paragraphs (c)(3) through (c)(5)," i.e. "[r]elationship with the claimant," "[s]pecialization," and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two (2) or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors" were considered. 20 C.F.R. § 404.1520c(b)(3).

Finally, in fashioning a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins, 466 F.3d at 883 (citation omitted). An ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record, see Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted), or discuss every word of a doctor's opinion or include limitations not

assessed by the doctor, see Fox v. Berryhill, 2017 WL 3197215, at *5 (C.D. Cal. July 27, 2017); Howard, 341 F.3d at 1012. However, an ALJ must discuss significant and probative evidence that is contrary to the ALJ's findings and explain why it has been rejected. See Robbins, 466 F.3d at 883; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) ("[the ALJ] must explain why "significant probative evidence has been rejected"") (quoting Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981)).

**3. Analysis**

Plaintiff contends that the ALJ erred by: (1) rejecting the opinions of Dr. Ganjianpour and Dr. Tabibian simply because they saw Plaintiff in the context of a worker's compensation claim, and (2) wholly failing to consider the opinions of Dr. Levine and Dr. Greils, which the doctors made just prior to Plaintiff's alleged onset date. Pl. MSJ at 8–10.

The Court largely agrees, with one minor caveat as to Dr. Greils's report.

**a. Dr. Greils's report is not medical opinion evidence**

The Court notes that, in his reports, Dr. Greils summarizes Plaintiff's past medical records and provides a disability rating for worker's compensation, but he does not discuss any restrictions or what Plaintiff can still do regarding work-related activities. AR at 2539–84. Medical opinion evidence must discuss Plaintiff's restrictions in things like her ability to perform physical or mental demands of work activities. 20 C.F.R § 1513(a)(2). Accordingly, Dr. Greils's report does not constitute medical opinion evidence.

The Ninth Circuit has held that an ALJ is required to consider all medical opinions in the record and has construed this rule to include opinions that predate the alleged onset date. 20 C.F.R. § 404.1520c(b); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The ALJ must consider all medical opinion evidence."); see also Williams v. Astrue, 493 Fed. Appx. 866, 868 (9th Cir. 2012) (ALJ erred by silently disregarding medical opinions that predated alleged disability onset date). "Thus, while the date of the opinion may be one factor the ALJ can consider in giving an

opinion more or less weight, a medical opinion is not insignificant or not probative merely because it is rendered prior to an alleged onset date, particularly in cases where the claimant suffers from an ongoing impairment." Henderson v. Comm'r, SSA, No. 6:17-cv-00481-HZ, 2018 WL 2102401, at *9 (D. Or. May 4, 2018). However, the Ninth Circuit and other courts have indicated ALJ is not necessarily required to consider non-opinion medical evidence that predates the alleged onset date. Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164–65 (9th Cir. 2008) (indicating that evidence from "well before" the alleged onset date is not probative); Davis v. Colvin, Case No. 6:14-cv-06373 (MAT), 2016 WL 368009, at *2 (W.D. N.Y. Feb. 1, 2016) (citing Brogan-Dawley v. Astrue, 484 F. App'x 632, 633 (2d Cir. 2012)) (concluding that the ALJ was not required to, but may consider evidence predating the relevant time period if that evidence clearly relates to Plaintiff's condition during the relevant period); Vargas v. Kijakazi, Case No. 20-cv-5927, 2022 WL 3099768, at *7 (E.D. Pa. Aug. 4, 2022) (holding that the ALJ is not obligated to consider medical records dating back to a time when disability would not have been paid, but must consider all medical opinions on the record). Accordingly, given that Dr. Greils's report predated the alleged onset date and is not medical opinion evidence, it is unclear whether the ALJ was necessarily required to consider it.

Still, as discussed below, the ALJ clearly erred by failing to consider Dr. Levine's opinion and by improperly rejecting Dr. Tabibian's and Dr. Ganjianpour's opinions.

**b. Dr. Levine's opinion is medical opinion evidence and the ALJ erred by failing to consider it**

In contrast to Dr. Greils's report, Dr. Levine's report explicitly restricts Plaintiff to semi-sedentary work where she may sit and stand at will. AR at 1336. Dr. Levine notes that he did not choose light work because that might involve the person standing or walking for an entire eight (8) hour day, and Plaintiff is not capable of that level of physical exertion. Id. The Commissioner points to one (1) page of Dr.

Levine's fifty (50) page report which discusses Plaintiff's "subjective factors of disability" for worker's compensation, and states that this page "does not contain any medical opinion as defined in 20 C.F.R. § 404.1513(a)(2)[.]" Def. MSJ at 3 n.1. However, given the above restriction discussed in his report, the Court disagrees with the Commissioner—Dr. Levine's report is clearly medical opinion evidence.

As noted above, even after the regulatory changes, an ALJ may not completely ignore a medical opinion, even if it predates the alleged onset date. See 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . in [the] case record." (emphasis added)); Tommasetti, 533 F.3d at 1041; Williams, 493 Fed. at 868; see also Kevin H. v. Kijakazi, Case No. 2:20-CV-00238 (FVS), 2021 WL 4221612, *6 (E.D. Wash. Sept. 15, 2021) ("[I]t is still incumbent upon the ALJ to consider all of the medical opinion evidence properly under the new regulations."). Accordingly, regardless of whether the ALJ erred by failing to consider Dr. Greils's report, the ALJ erred by wholly failing to consider the medical opinion evidence contained in Dr. Levine's report.

**c. The ALJ erred by failing to discuss significant and probative evidence contained in Dr. Levine's, Dr. Ganjianpour's, and Dr. Tabibian's opinions**

The Commissioner argues that the ALJ correctly declined to consider Dr. Tabibian's and Dr. Ganjianpour's opinions because they made conclusions in the workers' compensation context. Def. MSJ at 9 ("Social Security adjudicators 'will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits'") (quoting 20 C.F.R. § 404.1504); ("Even under the prior version of the regulations (that do not apply here), worker's compensation terms 'are not conclusive in a social security case'") (quoting Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996)). However, Plaintiff is not arguing that the ALJ should have deferred to the doctors' conclusions about whether Plaintiff

is disabled; Plaintiff simply argues that the ALJ was required to consider the medical opinion evidence contained in the doctors' determinations.

In fact, directly following the sentence the Commissioner cites, the Code of Federal Regulations states, "[h]owever, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim[.]" 20 C.F.R. 404.1504. Indeed, courts in this district have held that "an ALJ may not disregard a medical opinion simply because it was generated for a workers' compensation case, or it used workers' compensation terminology. Instead, an ALJ must evaluate any objective medical findings in such opinions 'just as he or she would [for] any other medical opinion.'" Cohen v. Berryhill, Case No. CV 17-7984 (JC), 2019 WL 483321, at *6 (C.D. Cal. Feb. 6, 2019) (quoting Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002)) (citation omitted). Accordingly, the fact that these opinions were formed in the worker's compensation context did not relieve the ALJ of their duty to consider them.

Indeed, regardless of the fact that the opinions were made in the worker's compensation context, the findings in Dr. Levine, Dr. Ganjianpour, and Dr. Tabibian's opinions were significant and probative, and, in part, conflicted with the ALJ's findings. For example, as detailed above, Dr. Levine limited Plaintiff to semi-sedentary work where she may sit and stand at will, and Dr. Tabibian noted that she should sit and stand as needed to mitigate pain; both of these conclusions conflict with the ALJ's formulation of light-work RFC and the ALJ's finding that Plaintiff could work if she were allowed to stand up for five (5) minutes for every thirty (30) minutes of sitting, and sit down for five (5) minutes for every thirty (30) minutes for standing. AR at 25, 1336, 1946. Dr. Tabibian also restricted Plaintiff from repetitive gripping, grasping, squeezing, pinching, holding, and torquing using both arms, and noted that she should avoid repetitive/frequent hand motions, which conflicts with the ALJ's RFC determination that Plaintiff can "frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities." Id. at 25,

1946. The Commissioner attempts to downplay the probative value of Dr. Tabibian's assessments, by arguing that they were, by their own terms, temporary, and did not bear on Plaintiff's long-term RFC finding. Def. MSJ at 9. However, Dr. Tabibian explicitly noted that the restrictions he listed "are considered to be permanent work restrictions." AR at 1946.

The ALJ was not required to accept these opinions. However, the ALJ failed to even mention Dr. Levine's opinion, and rejected Dr. Ganjianpour's and Dr. Tabibian's opinions outright, solely because they were made in the workers' compensation context—as discussed above, without more, this was not a proper basis to refuse to consider the opinion evidence. Accordingly, by failing to explain why they rejected the significant and probative evidence in Dr. Ganjianpour or Dr. Tabibian's opinion that conflicted with their findings—and by failing to even mention Dr. Levine's opinion—the ALJ clearly erred. See Robbins, 466 F.3d at 883; Flores v. Shalala, 49 F.3d 562, 570–71 (9th Cir. 1995) (as amended) ("We have made it . . . clear that, in reaching her decision, the Secretary may not reject 'significant probative evidence' without explanation." (citing Vincent, 739 F.2d at 1395)); Jeremy P. M. v. Comm'r of Soc. Sec., Case No. 3:20-cv-01042 (BR), 2021 WL 3099921, at *3 (D. Or. July 22, 2021) ("[T]he Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on 'supportability' and 'consistency' using the factors specified in the regulations." (citation omitted)).

**4. Harmlessness**

The ALJ's error is not harmless. A decision of the ALJ will not be reversed for errors that are harmless. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). However, a reviewing court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." Id. at 1056. In other words, legal errors are harmless only if they are inconsequential to the non-disability decision. Id. at 1055.

Here, the ALJ's conclusion that Plaintiff could perform light work and was therefore not disabled, as well as the ALJ's rejection of Plaintiff's symptom testimony, were based on an incomplete record due to the ALJ's failure to consider multiple medical opinions. The Court cannot confidently conclude that this failure was inconsequential to the ultimate disability determination. See Cohen, 2019 WL 483321, at *8. Accordingly, the ALJ's error was not harmless.

**VIII.**

**RELIEF**

**A. APPLICABLE LAW**

"When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Hill, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.'" Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id.; see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

**B. ANALYSIS**

Here, the Court concludes remand for further proceedings is warranted. As noted, the ALJ's assessment of the medical opinion evidence is intertwined with other issues raised in the Motion for Summary Judgement, including his consideration of Plaintiff's testimony. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); Augustine ex rel. Ramirez v. Astrue, 536

F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); Vaughn v. Berryhill, 242 F. Supp. 3d 998, 1010 (E.D. Cal. 2017) (dispensing of exhaustive analysis of plaintiff's remaining issues because the ALJ's evaluation of medial opinion evidence and claimant's testimony were "inescapably linked"). Because it is unclear, considering these issues, whether Plaintiff is in fact disabled, the Court **REMANDS** on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell v. Barnhart, 336 F.3d 1112, 1115–16 (9th Cir. 2003). The parties may freely take up all issues raised in the Motion for Summary Judgement, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

## IX.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this action for further proceedings consistent with this Order. **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: August 4, 2023

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge